## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

RAY A. SKAGGS, #159021 )
(full name)                      (Register No). )
JEFF. CITY CORR. CTR., 8200 NO )
MORE VICTIMS RD. JEFF. CITY, )
MISSOURI 65101 )
             Plaintiff(s). )

11-4306-CV-C-NKL-P

                                 )
v.                               )        Case No._____
                                 )
                                 )
DR. JOHN DOE, DR. WILLIAMS, )
(Full name)                      )
DR. BAKER, et al., CORR. MED. )
SERVICES (CMS), JEFF. CITY, MO )
             Defendant(s). )

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.    Place of present confinement of plaintiff(s): RAY A. SKAGGS #159021, JEFFERSON CITY
      CORRECTIONAL CENTER, 8200 NO MORE VICTIM RD., JEFFERSON CITY, MO 65101

II.   Parties to this civil action:
      Please give your commitment name and any another name(s) you have used while
      incarcerated.

      A. Plaintiff RAY A. SKAGGS                      Register No. 159021
         Address JEFFERSON CITY CORRECTIONAL CENTER, 8200 NO MORE VICTIMS ROAD
         JEFFERSON CITY, MISSOURI 65101.

      B. Defendant DR. JOHN DOE, DR. WILLIAMS, DR. BAKER, JEFFERSON CITY CORR.
         CTR. 8200 NO MORE VICTIMS RD. JEFFERSON CITY, MISSOURI 65101
         Is employed as DOCTORS FOR THE CORRECTIONAL MEDICAL SERVICES (CMS)
         CONTRACTED BY THE MISSOURI DEPARTMENT OF CORRECTIONS.

      For additional plaintiffs or defendants, provide above information in same format on a
separate page.

              PLEASE SEE COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. 1983
              ATTACHED HERETO.

1

III.　Do your claims involve medical treatment?　　　Yes __XX__　　No _____

IV.　Do you request a jury trial?　　　　　　　　Yes __XX__　　No _____

V.　Do you request money damages?　　　　　　　Yes __XX__　　No _____

　　State the amount claimed?　　　　　　$__10,000,000.00__ (actual/punitive)

VI.　Are the wrongs alleged in your complaint continuing to occur?　Yes __XX__ No ____

VII.　Grievance procedures:

　　A. Does your institution have an administrative or grievance procedure?
　　　　　　　　　　　　　　　　　　　Yes __XX__　　No _____

　　B. Have the claims in this case been presented through an administrative or grievance procedure within the institution?　　Yes __XX__　　No _____

　　C. If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)
　　__PLEASE SEE COMPLAINT UNDER CIVIL RIGHTS ACT ATTACHED HERETO.__
　　_____
　　_____
　　_____

　　D. If you have not filed a grievance, state the reasons.
　　NOT APPLICABLE (N/A)
　　_____
　　_____
　　_____

VIII.　Previous civil actions:

　　A. Have you begun other cases in state or federal courts dealing with the same facts involved in this case?　　　　　　　Yes _____　　No __XX__

　　B. Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated?　　Yes _____　　No __XX__

　　C. If your answer is "Yes," to either of the above questions, provide the following information for each case.　　N/A

　　　　(1) Style: _____
　　　　　　　　　(Plaintiff)　　　　　　　　(Defendant)
　　　　(2) Date filed:_____

2

(3) Court where filed: ___N/A___

(4) Case Number and citation: ___N/A___

(5) Basic claim made: ___N/A___

(6) Date of disposition: ___N/A___

(7) Disposition: ___N/A___
(Pending) (on appeal) (resolved)
(8) If resolved, state whether for: ___N/A___
(Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX.   Statement of claim:

A.   State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.
PLEASE SEE COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C. 1983
ATTACHED HERETO.

B.   State briefly your legal theory or cite appropriate authority:
PLEASE SEE COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C. 1983
ATTACHED HERETO.

3

X.     Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

PLEASE COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C. 1983

ATTACHED HERETO.

XI.    Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. PLAINTIFF IN PROCEEDING PRO SE.

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?                                    Yes_____ No XX_____

   If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.
   N/A

C. Have you previously had a lawyer representing you in a civil action in this court?
                                                                          Yes _____   No XX_____

   If your answer is "Yes," state the name and address of the lawyer.
   N/A

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this _____1_____ day of Sept ☙ 20 11

_Ray Shaggs_
Signature(s) of Plaintiff(s)

4

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

RAY A. SKAGGS,
PRISON NO. 159021,

    Plaintiff,

    vs.

DR. JOHN DOE,
Corr. Medical Services (CMS)
DR. WILLIAMS,
Corr. Medical Services (CMS)
DR. BAKER,
Corr. Medical Services (CMS)
DR. JOHN DOE,
Columbia University Hospital,
NURSE DENISE,
Corr. Medical Services (CMS)
NURSE BETH,
Corr. Medical Services (CMS),
NURSE DEANNA,
Corr. Medical Services (CMS),
NURSE MISSY,
Corr. Medical Services (CMS)
NURSE HOLLY,
Corr. Medical Services (CMS),
DR. JOHN DOE,
Jeff. City Cancer Center,
GEORGE LOMBARDI,
Mo. Department of Corrections,

    Defandant(s).

)
)
)
)
)
)
)
) Case No. _____
)
)
) Demand for Jury Trial
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
) Defendants are sued in
) their Individual, Personal,
) and Official Capacity.
)

## COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. §1983

### I.
### PRELIMINARY STATEMENT

This is a civil rights action filed by Ray A. Skaggs #159021, a state prisoner, for declaratory, injunctive and monetary relief under Title 42 U.S.C. Section 1983, alleging that the above named Defendants have acted and are acting with deliberate indifference to Plaintiff's serious medical condition, in violation of his Eighth Amendment rights to be free from cruel and unusual punishment, and his rights under the Fourteenth Amendment to due process of law under the United States Constitution.

-1-

## II.
### STATEMENT OF JURISDICTION

1. This Court has jurisdiction over Plaintiff's claims in violation of his Federal Constitutional rights under Title 42 U.S.C. §§1331(a), 1334. The events described in this complaint took place while in custody of the Missouri Department of Correction at the North Eastern Correctional Center (NECC), Missouri Eastern Correctional Center (ME CC), and the Jefferson City Correctional Center (JCCC), which the harm is still continuing here in the Jefferson City Correctional Center, therefore this Court has jurisdiction over Plaintiff's complaint.

2. Plaintiff request this Court's jurisdiction to include service on Defendants under the attached Motion to Proceed In Forma Pauperis.

3. Plaintiff has exhausted all of the available remedies as required by the Prison Litigation Reform Act of 1995, by and through the Missouri Department of Corrections' Policies and Procedures.

4. Plaintiff has not filed any other actions in state or federal court dealing with the same facts involved in this complaint at this time, however, there will be a request for a Temporary Restraining Order and/or Order of Injunction filed with this Court during these proceedings.

## III.
### STATEMENT OF PARTIES

5. At all times pertinent to this complaint, Plaintiff, Ray A. Skaggs is incarcerated at the Jefferson City Correctional Center (JCCC), 8200 No More Victims Road, Jefferson City, Missouri 65101.

6. At all times pertinent to this complaint, Doctor John Doe has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections, and can be located at the North Eastern Correctional Center (NECC), Bowling Greene, Missouri, and can be served through his attorney.

7. At all times pertinent to this complaint, Doctor Williams has/is acting of the color of state law and is employed by the

Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Missouri Eastern Correctional Center (MECC), in Pacific, Missouri and can be served through his attorney.

8. At all times pertinent to this complaint, Doctor Baker has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center (JCCC) and can be served through his attorney.

9. At all times pertinent to this complaint, Doctor John Doe of the Columbia University Hosptial has/is acting under the color of state law and is employed by the Columbia University Hosptial contracted by the Missouri Department of Corrections and can be located in Columbia, Missouri and can be served through his attorney.

10. At all times pertinent to this complaint, Nurse Denise has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center (JCCC) and can be served through her attorney.

11. At all times pertinent to this complaint, Nurse Beth has/is acting and the color of state law, is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center (JCCC) and can be served through her attorney.

12. At all times pertinent to this complaint Nurse Deanna has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center (JCCC) and can be served through her attorney.

13. At all times pertinent to this complaint, Nurse Missy has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center (JCCC) and can be served through her attorney.

14. At all times pertinent to this complaint, Nurse Holly

has/is acting under the color of state law and is employed by the Correctional Medical Services (CMS), contracted by the Missouri Department of Corrections and can be located at the Jefferson City Correctional Center and can be served through her attorney.

15. At all times pertinent to this complaint Defendant John Doe is employed by the Columbia University Hospital has/is acting of the color of state law and is contracted by the Missouri Department of Corrections and can be located in Columbia, Missouri and can be served through his attorney.

16. At all times pertinent to this complaint, Defendant John Doe is employed by the Jefferson City Cancer Center has/is acting under the color of state law and is contracted by the Missouri Department of Corrections and can be located in Jefferson City, Missouri and can be served through his attorney.

17. At all times pertinent to this complaint, the George Lombardi, Director of the Missouri Department of Corrections has/is acting under the color of state law and can be located at P.O. Box 236, Jefferson City, Missouri 65101 and is contracted by the State of Missouri and can be served through his attorney.

## IV.
## STATEMENT OF CLAIMS

18. Defendant Doctor John Doe of the North Eastern Correctional Center (NECC) has violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when he acted with deliberate indifference to Plaintiff's serious medical conditions.

19. Defendant Doctor Williams of the Missouri Eastern Correctional Center (ME CC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when he acted with deliberate indifference to Plaintiff's serious medical conditions.

20. Defendant Doctor Baker of the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law, when he acted with deliberate indifference to Plaintiff's serious medical conditions.

21. Defendant Doctor John Doe of the Columbia University Hospital violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when he acted with deliberate indifference to Plaintiff's serious medical conditions.

22. Defendant Nurse Denise of the Correctional Medical Services (CMS) at the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when she acted with deliberate indifference to Plaintiff's serious medical conditions.

23. Defendant Nurse Beth of the Correctional Medical Services (CMS) located at the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when she acted with deliberate indifference to Plaintiff's serious medical conditions.

24. Defendant Nurse Deanna of the Correctional Medical Services (CMS) at the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when she acted with deliberate indifference to Plaintiff's serious medical conditions.

25. Defendant Nurse Missy of the Correctional Medical Services (CMS) at the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when she acted with deliberated indifference to Plaintiff's serious medical conditions.

26. Defendant Nurse Holly of the Correctional Medical Services (CMS) at the Jefferson City Correctional Center (JCCC) violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when she acted with deliberate indifference to Plaintiff's serious medical conditions.

27. Defendant Dr. John Doe of the Jefferson City Cancer Center

violated Plaintiff's rights under the Eighth Amendment and the Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when he acted with deliberate indifference to Plaintiff's serious medical conditions.

28. Defendant George Lombardi, Director of the Missouri Department of Corrections violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to be free from cruel and unusual punishment and due process of law when he acted with deliberate indifference to Plaintiff's serious medical conditions.

## V.
## STATEMENT OF FACTS

29. On February 14, 2006, Plaintiff was incarcerated at the Phelps County Jail charged with First Degree Tampering and Second Degree Burglary.

30. After conviction, in May of 2006, Plaintiff was sent to the Fulton Reception and Diagnostic Correctional Center (FRDC), where he weighed approximately 180 pounds. He noticed himself losing weight and did not know why. He also started losing energy and getting weaker.

31. In July of 2006, he was sent to the North Eastern Correctional Center (NECC), at Bowling Greene, Missouri.

32. In March of 2007, he found himself getting tired, loss of appetite, in severe pain and blood in his stool.

33. He began to submit Medical Service Requests (MSR's) to see a doctor. Once he finally seen a doctor, he explained to Defendant John Doe his symptoms and asked for a rectal-exmination or visual examination of his rectal area for cancer or hemmorroids. He never received any examination and Dr. John Doe stated that some of Plaintiff's symptoms were caused by stress of being in prison and the other things were caused by hemmorroids and he gave Plaintiff medication for hemmorroids and swelling. As for the stress he informed Plaintiff that he needed to see Mental Health.

34. A month or two later, Plaintiff was called in to see the doctor to do x-rays on his lungs and to get some lab work done because of his history of asthma. But before the x-rays were performed, Plaintiff again informed the doctor of his symptoms

and how they were getting worse. He again asked the doctor to perform a rectal examination. Again the doctor refused and told Plaintiff that he had already gave Plaintiff medication for hemmorroids and that was all he could do. He also again told Plaintiff to see Mental Health.

35. After the x-rays and the lab work was completed, the doctor called Plaintiff back to his office to discuss the x-rays. He explained to Plaintiff that there were three (3) spots around his lungs and prescribed an inhaler for asthma and a inhaler that was supposed to get rid of the spots around the lungs. He was told that the lab test showed there was nothing wrong. Nevertheless, there was never any follow-up.

36. Being naive and trusting, he believed the doctor and tried to ignore the symptoms and in January-Feburary, the bleeding started again and Plaintiff began submitting MSR's but was never seen again and then transferred to the Missouri Eastern Correctional Center (ME CC) located in Pacific, Missouri.

37. In April-March of 2008, Plaintiff went to Medical and seen Defendant Williams. At that point Plaintiff was down to 150 pounds and the symptoms had gotten worse. After discussing the symptoms with Defendant Williams, Plaintiff requested a rectal examination, which Defendant Williams complied and ask when the last time Plaintiff had had a prostate examination. Plaintiff explained that it had been a while. Defendant Williams conducted a rectal examination and immediately seen a problem and explained that he believed that Plaintiff had colon cancer. He then sent Plaintiff to Surgicare of Missouri P.C. an outpatient clinic in Jefferson City, Missouri for a CT Scan and a Biopsy. The CT Scan showed that Plaintiff had both tumors around his lungs and colon. However, this Doctor said the biopsy erroneously showed that Plaintiff did not have colon cancer. Both Defendant Williams and the Doctor in Jefferson City believed that the biopsy was wrong. Defendant Williams then sent Plaintiff to an out-patient clinic in Festus, Missouri for an upper GI. The results came back showing there were tumors on both of Plaintiff's lungs, one which was an inch and a half in diameter.

38. Defendant Williams then called Plaintiff in to do more x-rays and afterwards, he called Plaintiff to his office to discuss the situation and informed Plaintiff that he did not understand why the Doctor and CMS Staff at Bowling Greene did not diagnosed Plaintiff or find these problems earlier with the original x-rays and lab work. But, instead they had told Defendant Williams that the spots around Plaintiff's lungs were a blur and that is why they did not follow through with any more testing. Defendant Williams told Plaintiff that he did not understand why they did not know what the spots were around Plaintiff's lungs, because he knew right off what they were by sitting down and looking at the x-rays.

39. Defendant Williams then decided that he wanted Plaintiff to have another biopsy done on Plaintiff's colon as the first one they believed to be erroneous. Plaintiff was then sent back to Surgicare of Missouri P.C. outpatient clinic in Jefferson City for the biopsy and those results came back 99.9% positive that Plaintiff had colon cancer.

40. At that point, Defendant Williams decided that Plaintiff should have another MRI performed. Plaintiff was then sent to the Washington University Hospital to get the MRI done and again the test came back showing that Plaintiff had cancer around both his colon and his lungs.

41. In August of 2008, Plaintiff was then sent to the Jefferson City Correctional Center (JCCC) to start treatments. Since being in the JCCC, Plaintiff has had thirty-five (35) months of Kemotherapy, five (5) weeks of radiation therapy and has had surgery done on his colon, where they went in and removed part of Plaintiff's colon and brought the rest of it out through an opening in Plaintiff's abdomen and formed it into stoma. Now, Plaintiff will have to wear a colostomy-bag for the rest of his life and the cancer around his lungs is not curable, which will eventually take Plaintiff's life.

42. The doctor from the cancer center has prescribed Plaintiff with Kemo-Pills to try and shrink the cancer around his lungs, but he doesn't know how long they will work.

43. In May of 2009, Defendant Baker took Plaintiff off of the pain medication (morphine) cold-turkey, without phasing him down on lower doses. That caused severe reactions both physically and mentally, which caused Plaintiff to believe that he was dying and caused extreme mental stress. Defendant Baker refused to prescribe Plaintiff with any other pain medications, even though Plaintiff was in severe pain.

44. In May or June of 2009, Plaintiff was sent to the Columbia University Hospital where a colonctomy surgery was conducted. This surgery took out Plaintiff's colon and re-routed his lower intestines to his stomach to a colonstomy bag, all because the CMS Medical Staff at Bowling Greene failed to diagnose Plaintiff sooner.

45. When Plaintiff spoke to Defendant John Doe of the Columbia University Hospital, Plaintiff informed him of Defendant Baker's decision to remove Plaintiff completely from any pain medication (morphine). This doctor prescribed Plaintiff with pain medication which Defendant Baker refused to allow him to take. Defendant Baker would not fill the prescription, because of CMS and Missouri Department of Correction's Policies. Instead, Defendant Baker prescribed Tylenol 3 with codine, which then caused Plaintiff severe pain in his stomach, which Plaintiff could not take.

46. In or around March or April 2009, Plaintiff was attending the Cancer Center in Jefferson City for kemo and radiation treatments. About Plaintiff's fourth or fifth week of treatment while on the radiation machine that rotates, the machine broke down shooting out greenish colored liquid. This radiated liquid starting burning Plaintiff's eyes and nose as the machine kept rotating. Plaintiff yelled at the staff to shut the machine down to let them know what was happening. They had to remove Plaintiff from the table. This was witnessed by the Correctional Officers and the staff who did nothing. The reaction from the fumes and the experience left Plaintiff very ill for days.

47. On July 3, 2009, Plaintiff was sent to the Columbia University Hospital for surgery to remove his colon. During this time, he was chained at all times even with a Correctional Officer

present. He was not allowed to move without being chained, nor was the chains removed while he was in bed.

48. Approximately July 5, 2009, medical staff finally got Plaintiff up to start trying to walk. During that exercise, Plaintiff broke open his stitches, which was very painful. Two males, doctors and nurses began to re-stitch him and he asked them if they would numb him up to stop the pain. They said that Plaintiff had to just "grin and bare it." This again was witnessed by Correctional Officers who again just stood there and said and did nothing. Plaintiff was in extreme pain without any anesthesia.

49. On or about July 9, 2009, Plaintiff was released from the Columbia University Hospital and brought back to the Jefferson City Correctional Center Hospital. The Columbia Hospital issued Plaintiff a prescription for pain medication, which again Defender Baker refused to fill because of cost. Plaintiff was then put back on Tylenol 3, which again constipated him and also gave him severe stomach pain for approximately four (4) days before CMS staff took him off of it. Plaintiff again suffered severe pain without any type of pain medication. Finally, Defendant Baker prescribed another pain medication which did nothing for the pain and Plaintiff continued to suffer. Plaintiff requested over and over that Defendant Baker put him back on a pain management medication that would stop this unnecessary treatment. Defendant Baker informed Plaintiff that he would contact the doctors at the Columbia University Hospital, but he never got back to Plaintiff and never prescribed Plaintiff with any type of pain medication. Plaintiff was again left to suffer the pain.

50. During Plaintiff's surgery, a drain hole was installed into the right side of Plaintiff's stomach. The purpose of this drain tube was to drain off any infection. Plaintiff ended up with severe infection in his stomach where the drain tube was positioned.

51. In August of 2009, Defendant Denise told Plaintiff that it had been left in too long and should have been removed a couple of weeks earlier. Sometime in August of 2009, Plaintiff was placed in Administrative Segregation (Ad-Seg) in Housing Unit Seven at JCCC. The first morning in housing unit seven, at around 7:30 a.m.,

when Defendant Deanna came to pass out medications, Plaintiff explained to her that he needed a new colostomy bag, as the one he had, had broken open. She said that she would go back to OPC and get another bag and bring back. Plaintiff had to stand over the toilet the entire time waiting on her and she never came back with the bag.

52. When the Correctional Officers came around with noon meals, Plaintiff asked them to contact medical, because Defendant Deanna said she would bring a new bag back to him. They stated they would check on it. When Plaintiff took his tray back to his bunk to eat, (there are no tables in which to eat on in Ad-Seg) feces shot out all over his tray, which prevented Plaintiff from eating and left him again standing over the toilet. Plaintiff again asked the Correctional Officers to contact medical because he was in need of a new bag. Finally, at 2:30 p.m. during Count, Plaintiff again asked the officers for a new bag, because he was still standing over the toilet. Finally, Defendant Deanna came back with one and Plaintiff asked her why she did not bring it back earlier and she stated that she was too busy.

53. Approximately September or October of 2009, Plaintiff was again taken back to the Jefferson City Correctional Center's Hospital where he resumed more Kemotherapy treatments. He spoke with Defendants Denise and Head Nurse Defendant Beth about what took place in Ad-Seg and they both reacted with anger and said they would take care of it, but never did nothing. Plaintiff was informed to file an Informal Resolution Request (IRR) on it and it should be resolved. However, Plaintiff is uneducated when it comes to the Grievance Procedure and the inmate law clerk are not allowed to assist him because of policy and procedure. Regardless, the Grievance procedure is clearly erroneous, because the Missouri Department of Corrections denies 90% of every complaint filed.

54. Each time Plaintiff was taken out to a real hospital, he was chained, a black box was placed on his handcuffs, which is both very painful. Each time requires alot of waiting, which he is never out of these handcuffs, blackbox or chains leaving him more miserable than his disease already has.

55. Upon returning from one of his out-side hospitals visits, his colostomy bag was full of feces and when cleaning the bag, he accidentally dropped it in the toilet, which was full of urine and feces. Plaintiff went to the JCCC Hospital door to tell the nurse what had happened. Defendant Deanna and Defendant Missy both responded and they ordered him to remove it from the toilet and clean it out and reuse it, which was very unsanitary.

56. When Defendant Holly came on duty, Plaintiff explained to her what had happened and she also refused to give him a clean bag and said "that's on you." Plaintiff responded with anger and threw the dirty colostomy bag on the floor, which responded in him being placed in a containment cell in the hospital and a Conduct Violation Report written against him. The defendants should know that when Plaintiff is taking Kemotherapy, his immune system is very low and leaves him more susceptible to infection and more disease. However, based on their past and their attitudes its quite clear that they don't care and is more or less elderly abuse.

57. Plaintiff has had many problems with the CMS staff and the above named Defendants since his surgery and kemotherapy treatments. Plaintiff is only allowed three (3) new colostomy bags per week. So, he has to clean and reuse them very often, which is almost impossible to clean adequately. Also, quite often he is not even allowed the three, which leaves him having to re-use and re-clean the unsanitary bags. He uses handi-wipes to help clean these bags and himself, but he is only allowed one (1) box per month, which is clearly not enough.

58. Plaintiff has been embarrassed and insulted almost each time he request any assistance from these Defendants and many other CMS staff. He has endured much pain and suffering at the hands of these Defendants. The Defendants have denied both the fact that he has cancer and proper treatment. His prescriptions for medications that would greatly reduce the pain and suffering has been denied.

59. It is quite clear that Plaintiff has terminal lung cancer, had the Defendants properly diagnosed and treated in a timely and professional manner, maybe Plaintiff would not be dying from this

-12-

disease. The Missouri Department of Corrections and the cronic care units that Plaintiff has been exposed to has left him severely depressed and in great pain. His condition not only hurts him, but it has effected his entire family. His shortened future will result in him not being able to share in many years of enjoyment and fulfilling association with his extended family as well. The above named Defendants are clearly liable for the denial of proper and adequate medical treatment and the facts clearly show that each of them has been clearly deliberate indifference to his serious medical needs and each should be held accountable.

## VI.
### CONCLUSION

60. If the arrangement of society is bad and a small number of people have power over the majority and oppress it, every victory over nature will inevitably serve only to increase that power and that oppression. That is what is actually happening.

## VII.
### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court enter judgments granting Plaintiff the following:

61. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

62. A preliminary and permanent injunction ordering the above named Defendants to provide Plaintiff with the proper pain medications; to provided him with the proper colostomy bags and cleaning supplies; to refrain from insulting and causing Plaintiff more misery than they already have; to provide him with the proper and adequate treatment.

63. Compensatory damages in the amount of $500,000.00 against each defendant, jointly and severally.

64. Punitive damages in the amount of $10,000,000.00 against each of the named Defendants.

65. A jury trial on all the issues triable by jury.

66. Re-imburse Plaintiff's cost for this litigation.

67. Appoint counsel to represent Plaintiff in the remaining litigation of this complaint.

68. Any additional relief that this Court deems proper, just and equitable.

Executed this ___1st___ day of ___Sept.___, 2011.

Respectfully Submitted,

_Ray Skaggs_

Ray A. Skaggs
#159021, H.U. 4
Jefferson City Correctional Center
8200 No More Victims Road,
Jefferson City, Missouri 65101

Complainant,

Pro Se.

## VIII.
## VERIFICATION

I, Ray A. Skaggs have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed this ___1st___ day of ___Sept.___, 2011.

_Ray Skaggs_

Ray A. Skaggs

Richard Martin - Notary Public
Notary Seal, State of
Missouri - Boone County
Commission #08617972
My Commission Expires 8/12/2012

-14-

Please recycle.




codeblocks
SILVER

USPS packaging products have been awarded Cradle to Cradle Certification℠ for their ecologically-intelligent design. For more information go to mbdc.com/usps

Cradle to Cradle Certified™ is a certification mark of MBDC.

PRIORITY MAIL®
RESS POSTAL SERVICE

usps.com

UNITED STATES POSTAL SERVICE

PRIORITY MAIL®

Visit us at usps.com

Flat Rate Mailing Envelope

For Domestic and International Use

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.

Label 106A, May 2008

From/Expéditeur:

Visit us at usps.com

For Domestic and International Use

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.

Label 106A, May 2008

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

INTERNATIONAL RESTRICTIONS APPLY:

4-POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES

Customs forms are required. Consult the International Mail Manual (IMM) at pe.usps.gov or ask a retail associate for details.



Recycled Paper

UNITED STATES POSTAL SERVICE

PRIORITY MAIL®

For Domestic and International Use



From
Ray Skaggs
809 Black St
Rolla MO
65401

TO
United States District Court
Western District of Missouri
Central Division
310 U.S. Courthouse
131 West High St.
Jefferson City MO 65102

Label 228, January 2008

U.S. POSTAGE
PAID
ROLLA MO
65401
NOV 02 11
AMOUNT
$7.40
00058360-03

65102

1006

United States Postal Service®
SIGNATURE CONFIRMATION

2308 3250 0000 2554 5033

CLERK, U.S. DIST. COURT
WEST. DIST. OF MO
JEFFERSON CITY, MO

2011 NOV -4 PM 12: 53

EP14F